**The below described is SIGNED.**

**Dated: June 29, 2006**  /s/ William J. Thurman
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**Robert and Shelley Fuger**,<br>Debtors. | Bankruptcy Number 06-20801<br><br>Chapter 13 |

**MEMORANDUM DECISION**

The matter before the Court is the continued hearing on confirmation of the Debtors' proposed chapter 13 plan. Specifically, the Court is called upon to determine whether the "applicable commitment period" in 11 U.S.C. § 1325(b)(1)(B)[1] is a monetary or temporal requirement. As this matter presents an issue of first impression in light of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), the Court elects to issue this Memorandum Decision. The Court determines that the term "applicable commitment period" requires the Debtors only to commit to a specific return to unsecured creditors, not to a specific period of time.

**I. BACKGROUND**

___

[1] All statutory references herein are to the Bankruptcy Code ("the Code") unless stated otherwise.

The Debtors commenced this chapter 13 bankruptcy case on March 20, 2006. Their Statement of Current Monthly Income, memorialized in Form B22C, shows that their current monthly income is greater than the median income for a family of two in the state of Utah. Accordingly, they are required to commit to an "applicable commitment period" of 60 months. At the same time, their calculations on Form B22C show a Monthly Disposable Income of -$877.71. Their proposed chapter 13 plan would return a total of $500 to unsecured creditors. The chapter 13 Trustee objects to confirmation of this proposed plan because it does not necessarily commit the Debtors to a plan lasting 60 months. The Trustee argues that if the plan was confirmed, the Debtors could obtain a discharge in this case earlier than 60 months by paying off the total due under the plan early. The Trustee also argues that under §§ 1325(b)(1)(B) and 1325(b)(4), the term "applicable commitment period" is a temporal requirement which actually requires a debtor to stay in bankruptcy for the entire period — 60 months in this case. The Debtors argue that the term "applicable commitment period" in § 1325(b)(1)(B) describes a monetary amount a debtor must pay through the plan rather than an actual temporal requirement.

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(L). Venue is appropriate under 28 U.S.C. § 1408(1).

## III. ANALYSIS

Section 1325(b)(1) states:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

    (B) the plan provides that all of the debtor's projected disposable income to be received in the *applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.[2]

Under § 1325(b)(4), the "applicable commitment period" is three years if the debtor is below the median family income for his or her state of residence, or is five years if the debtor is above the median income. Section 1325(b)(4)(B) states that the applicable commitment period "may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period."

**A. Statutory Construction**

The Court's primary objective in statutory construction is to determine legislative intent.[3] Where the language is clear on its face, the Court's inquiry should normally end.[4] If the language is ambiguous, the Court should consider the manifest intent of the legislature, and enforce it if apparent.[5]

    1.    <u>Clear Meaning of the Code</u>

The Court must give meaning to every word in a statute, keeping an eye on the statutory scheme as a whole.[6] The Trustee argues that the clear meaning of § 1325(b)(1)(B) governs this

---

[2] Emphasis added.

[3] <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526 (2004); <u>Padilla-Caldera v. Gonzales</u>, ___ F.3d ___ No. 06-40056, 2006 WL 1670289 (10th Cir., June 19, 2006).

[4] <u>Pioneer Investment Svcs v. Brunswick Assoc. Ltd. P'ship</u>, 507 U.S. 380 (1993); <u>Connecticut Nat. Bank v. Germain</u>, 503 U.S. 249, 253 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

[5] <u>Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection</u>, 474 U.S. 494 (1986); <u>Griffin v. Oceanic Contractors, Inc.</u>, 458 U.S. 564 (1982).

[6] <u>Lamie</u>, 540 U.S. at 528.

issue. Specifically, the Trustee argues that the term "applicable commitment period" uses the word 'period' which can only be construed as a measure of time.

The Court believes the term "applicable commitment period" is ambiguous when considered in the context of § 1325(b)(1)(B). There are several plausible interpretations of this provision. The term could modify the same Code section's reference to "projected disposable income," thereby directing that the Court look to the debtor's disposable income projected over a specific period. Or it could be read as a separate requirement that a debtor must commit to a plan for a specific length of time.

The word, "period" by itself does seem to refer to a period of time. Nevertheless, the word does not exist in a vacuum and the Court's statutory construction cannot always rest on the isolated meaning of one word.[7] As the U.S. Supreme Court recently stated:

> The definition of words in isolation, however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.[8]

Context is important in determining the clear meaning of a statute. In this case, the definition of the word "period" as a unit of time conflicts with the possible contextual reading of "applicable commitment period," as discussed above. The Court believes this conflict renders the plain meaning of § 1325(b)(1)(B) ambiguous. As the Court cannot resolve this issue from the face of the Code itself, it must attempt to decipher the Congressional intent underlying § 1325(b)(1)(B).

---

[7] Dolan v. U.S. Postal Service, ___ U.S.___, 126 S.Ct. 1252 (Feb. 22, 2006).

[8] Id. at 1257.

      2.    Congressional Intent

To discern Congressional intent underlying provisions of the Code changed by the BAPCPA, the Court must look to pre-BAPCPA practice[9] and the relevant statutory framework.[10] For purposes of gleaning the Congressional intent underlying the BAPCPA, the status of Bankruptcy practice before the BAPCPA amendments is unusually important. The BAPCPA did not replace the entire Code, but merely supplemented its provisions. Accordingly, the Court may find Congressional intent by looking not only to the provisions of the Code which were changed by the BAPCPA, but also to those provisions which were left untouched.[11] This analysis is particularly illuminating when applied to the meaning of "applicable commitment period" under § 1325(b). It reveals that the term serves as *both* a temporal and monetary requirement.

Initially, the Court believes it helpful to note the original legislative intent underlying the addition of § 1325(b) to the Code. Before the BAPCPA, § 1325(b)(1)(B) required a debtor to provide the chapter 13 trustee with all "*projected disposable income to be received* in the *three-year period* beginning on the date of the first payment. . ."[12] As expressed in one Bankruptcy treatise, §1325(b) "was intended to be an economic test of the debtor's efforts. Upon objection,

---

[9] In re Jass, 340 B.R. 411, 416 (Bankr. D. Utah 2006) (noting that legislative history of the BAPCPA is largely unhelpful for purposes of statutory construction); Accord In re Pak, ___ B.R. ___, No. 05-49326, 2006 WL 1359632 (Bankr. N.D. Cal. 2006); In re Grady, ___ B.R.___, No. 06-60726, 2006 WL 1689324 (Bankr. N.D. Ga. 2006).

[10] See, e.g. Vialpolando v. Shea, 475 F.2d 731 (10th Cir. 1973); U.S. v. R.L.C., 503 U.S. 291, 314 (1992) (O'Connor, J. dissenting).

[11] U.S. v. Congress of Indus. Organizations, 335 U.S. 106 (1948) ("There is no better key to a difficult problem of statutory construction than the law from which the challenged statute emerged."); Morse v. Republican Party of Virginia, 517 U.S. 186, 221 (1996).

[12] Emphasis added.

the debtor must make a 'best effort,' defined as commitment of all projected income in excess of reasonable and necessary expenses for at least three years."[13]

Through the BAPCPA, Congress amended § 1325(b)(1)(B) to substitute the words "three-year period" with the term "applicable commitment period." At the same time, Congress left the majority of § 1325(b)(1)(B) untouched. The provision still refers to "projected disposable income to be received" in a specific "period." That Congress left these words in § 1325(b)(1)(B) is significant because of how they were interpreted before the BAPCPA. As this Court recently noted in Jass, pre-BAPCPA courts interpreted the whole of § 1325(b)(1)(B) to require a debtor to *project* income into the future, and commit to pay that amount into the chapter 13 plan.[14] These interpretations largely rested on a literal reading of the term "projected disposable income."[15] As one pre-BAPCPA court said, "[a]fter confirmation, the trustee can expect to receive this projected amount over the next three years, not the actual disposable income received by the debtor, which could be a greater amount."[16] In this sense, the "three-year period" was a monetary term under pre-BAPCPA law.

At the same time, other pre-BAPCPA enactment courts interpreting the "three-year period" requirement under § 1325(b)(1)(B) acknowledged that there was also a temporal nature to that provision. The term "three-year period" was construed to modify and guide a debtor's determination of his or her projected disposable income.[17] Courts required debtors to determine

---

[13]Keith M. Lundin, Chapter 13 Bankruptcy § 163.1 (3d ed., Bankruptcy Press 2004).

[14]340 B.R. at 417; In re Anderson, 21 F.3d 355 (9th Cir. 1993); In re Richardson, 283 B.R. 783 (Bankr. D. Kan. 2002); In re Bass, 267 B.R. 812 (Bankr. S.D. Ohio 2001).

[15]See, e.g. In re Miller, 325 B.R. 539, 543 (Bankr. W.D. Penn. 2005).

[16]Richardson, 283 B.R. at 798.

[17]In re Bass, 267 B.R. at 818; In re Young, 237 B.R. 791, 800 (10th Cir. BAP 1999).

their monthly disposable income, and project that amount out for a three year term.[18] Courts also recognized and enforced the requirements in § 1329(c), which forbade a debtor from modifying a plan to last beyond the three-year period without court approval. In that sense, the term "three-year period" was interpreted pre-BAPCPA as both a temporal and monetary provision.

Against this background, Congress amended § 1325(b)(1)(B) but left the term "projected disposable income" untouched. The result is an inquiry whereby the Court must still require chapter 13 plans to provide payments based on disposable income projected into the future.[19] Section 1325(b)(1)(B) is still focused on the amount a debtor will return to unsecured creditors, rather than the length of time it might take the debtor to perform under the plan. The fact that Congress replaced the term "three-year period" with "applicable commitment period" does not change the overall nature of § 1325(b)(1)(B). Not only must debtors still compute their projected disposable income, but they must also now do so over a 60 month period if their gross monthly income is greater than the median family income for their state of residence.[20]

Congress also amended § 1329(c) to require that a debtor may not modify a chapter 13 plan to last longer than the "applicable commitment period under section 1325(b)(1)(B)." In doing so, Congress exhibited an understanding that the former "three-year period," and its new replacement, "the applicable commitment period," serve both temporal and monetary functions simultaneously. The reference in § 1329(c) to "applicable commitment period" cannot

---

[18]Richardson, 283 B.R. at 799 ("[T]he first step in arriving at projected disposable income is to multiply the debtor's monthly income by 36.").

[19]Jass, 340 B.R. at 416.

[20]The Court notes that Congress changed the *method* for determining projected disposable income. But for purposes of this decision, it is important only to say that the *thought process* underlying § 1325(b)(1)(B) remains unchanged. In re Wilbur, ___ B.R. ___, No.06-20104, 2006 WL 1687586 (Bankr. D. Utah, June 21, 2006).

reasonably be interpreted as a monetary provision, just as its reference in § 1325(b)(1)(B) is not a purely temporal requirement.

Thus, the Court concludes that Congressional intent underlying the amendments to § 1325(b)(1)(B) is clear — the term "applicable commitment period" is both a monetary and a temporal provision. It is monetary in the sense that it has always required debtors to commit to pay unsecured creditors a set return. It is temporal in the sense that it has always required debtors to determine that return by projecting over a specific time period, and it provides debtors with a time limit for performing under a chapter 13 plan.

### B.     Contrary Case-law

The Court is aware that two courts have recently addressed this issue, and have concluded that the term "applicable commitment period" is a temporal requirement only.[21] Under these decisions, debtors are required to commit to a specific time period rather than a specific return to unsecured creditors. This Court respectfully disagrees with these decisions.

The Schanuth and McGuire opinions argue that the plain language of §§ 1326(b)(1) and (4) suggests that "applicable commitment period" is a temporal requirement.[22] Specifically, they point to the word 'period,' reasoning that the word "means a chronological division."[23] As discussed above, in this Court's opinion the definition of the word 'period' is not that clear. Moreover, the use of the word 'period' in § 1325(b)(1)(B) is not new to the Code. Before the

---

[21]In re Schanuth, ___ B.R.___, No. 06-40056, 2006 WL 1515851 (Bankr. W.D. Mo. May 25, 2006) (Venters, J.); Accord In re McGuire, ___ B.R. ___, No. 06-60054, 2006 WL 1527146 (Bankr. W.D. Mo. June 1, 2006) (Federman, J.).

[22]Schanuth, 2006 WL 1515851 at *4.

[23]Id. (quoting www.merriamwebster.com/dictionary/period).

BAPCPA, § 1325(b)(1)(B) referred to a "three-year period." In that context, pre-BAPCPA courts did not consider the word 'period' dispositive of § 1325(b)(1)(B)'s meaning. Also as discussed above, pre-BAPCPA courts viewed the whole of § 1325(b)(1)(B) as requiring debtors to commit to returning a specific amount of money to unsecured creditors. Courts interpreted the "three-year period" as temporal only in the sense that the debtor's commitment was defined as disposable income projected for three years. This point is best illustrated by a pre-BAPCPA case published only a few months before the BAPCPA became effective:

> Confirmation is the court's approval of a contract, in effect, between the debtor and creditors. . . The focus must be on this confirmed statutory contract. There is nothing in the code that says the debtor must suffer through three years of paying projected disposable income if good fortune would allow him or her to make an earlier payoff. The object of the Code provision [§ 1325(b)(1)(B)] is not to force the debtor to make payments over a period of time; the object is to give creditors some recovery on their claims, even tough [sic] it may not be full recovery.[24]

In light of the way pre-BAPCPA courts interpreted the word 'period' in § 1325(b)(1)(B), it seems doubtful that the same word would take an entirely new meaning now, absent clear statutory language to the contrary.[25]

The Schanuth and McGuire opinions also reason that "applicable commitment period" must be a temporal requirement because to hold otherwise would render § 1325(b)(4)(B) "awkward, if not meaningless" in light of § 1325(b)(1)(A).[26] Section 1325(b)(4)(B) states that the "applicable commitment period" may be less than 3 or 5 years "if the plan provides for

---

[24]In re Miller, 325 B.R. 539, 543 (Bankr. W.D. Penn. 2005).

[25]See Cohen v. de la Cruz, 523 U.S. 213 (1998) ("We, however, will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure. . .").

[26]Schanuth, 2006 WL 1515851 at *4; Accord McGuire, 2006 WL 1527146 at *6

payment in full of all allowed unsecured claims over a shorter period." Section 1325(b)(1)(A) states that where a trustee or an unsecured creditor objects to confirmation, a debtor need not propose to pay unsecured creditors the debtor's projected disposable income so long as "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim." The Schanuth court argued that interpreting "applicable commitment period" as a monetary provision would render § 1325(b)(5) "more tautological than substantive," and thus, meaningless.[27] At the same time, the Schanuth court also admitted that "the ultimate outcome would not be altogether different under a temporal interpretation."[28]

The Court finds a great deal of conceptual overlap, and only slight distinctions between, §§ 1325(b)(1)(A) and (b)(4)(B). The Court need not decide the interplay between these sections in the present case. It is enough to say that no matter which interpretation the Court chooses for "applicable commitment period," neither will shed any real light on these two sections.[29] In light of what this Court determines to be Congress' manifest intent that the term "applicable commitment period" is not solely a temporal requirement, the Court is not inclined to hold otherwise to avoid an awkward reading of the Code.

Furthermore, the Schanuth and McGuire opinions reason that "applicable commitment period" must be a temporal requirement because to hold otherwise would be "a gross departure

---

[27] 2006 WL 1515851 at *4.

[28] Id.

[29] The Schanuth court appears to acknowledge this much, stating only that interpreting "applicable commitment period" as temporal results in a slightly less awkward reading. 2006 WL 1515851 at *4.

from pre-BAPCPA practice that is not justified by the language or structure of the statute."[30] According to these decisions, pre-BAPCPA debtors "could not exit chapter 13 in less than three years without paying in full the allowed unsecured claims."[31] However, several pre-BAPCPA cases have held that a debtor who received a windfall could payoff the amounts owing under his or her plan before the three-year period ended without paying unsecured creditors the full amount of their claims.[32]

To be sure, this Court agrees with Schanuth and McGuire insofar as the term, "applicable commitment period" acts as a temporal provision at times. But this Court respectfully disagrees with the conclusion reached in these opinions to the extent they would bind debtors to a specific period of time. The Court believes that the manifest intent of Congress underlying § 1325(b)(1)(B) is as it was before the BAPCPA — to require debtors to commit to a specific return to unsecured creditors. That amount is determined by projecting the debtor's disposable income over the length of the "applicable commitment period." In that sense, the term "applicable commitment period" is *both* temporal and monetary in nature.

Finally, the Court notes that practicality supports the Court's holding. The Trustee is free to show that a debtor's projected disposable income is best reflected by Schedules I and J rather

---

[30]Schanuth, 2006 WL 1515851 at *5; McGuire, 2006 WL 1527146 at *6.

[31]Schanuth, 2006 WL 1515851 at *5.

[32]Richardson, 283 B.R. at 801-802 ("If after obtaining confirmation of a plan, a debtor receives a windfall and proposes to pay the total projected disposable income before the end of the plan term, the trustee should accept the money, distribute it according to the plan, and grant the debtor a discharge."); Accord In re Forte, 341 B.R. 859 (Bankr. N.D. Ill. 2005) (Black, J.); Miller, 325 B.R. at 542 (Refusing "to treat a voluntary early pay-off of confirmed plans as a modification where Debtor seeks no change in the payment amount and actually increases the economic worth by paying the contractual obligations due under a confirmed plan earlier than promised."); In re Sunahara, 326 B.R. 768 (9th Cir. BAP 2005).

than by Form B22C.[33] The Trustee may make this argument and present evidence in support thereof, or show that Schedules I and J should be amended. Then, the Court will be inclined to compute the debtor's projected disposable income according to the Schedules, or such other evidence, and multiply that number by the "applicable commitment period." But where the debtor's projected disposable income is consistent with the calculations on Form B22C, it makes little sense to hold the debtor hostage for 60 months where the debtor can satisfy the requirements of § 1325(b)(1)(B) in a shorter period. The Trustee's effort to obtain the greatest return for unsecured creditors is admirable and indeed a requirement under §1325(b)(1)(B), but the proper method for the Trustee's objection is not that the debtor must be sentenced to a 60 month plan, but that the debtor's projected disposable income is larger than is exhibited by Form B22C.

## IV.  APPLICATION TO THE DEBTORS

The Debtors' Statement of Current Monthly Income results in a negative number. The Trustee has not attempted to show that their projected disposable income is substantially different from the figures listed on Form B22C.[34] Accordingly, the Debtors have a negative projected disposable income, which they propose to pay over a period less than their "applicable commitment period" of 60 months.[35] Under this decision, the Court determines that the term

---

[33]See Jass, 340 B.R. at 411; In re Kibbe, — B.R. —, 2006 WL 1300993 (Bankr. D.N.H. 2006).

[34]See Jass, 340 B.R. at 416; In re Kibbe, — B.R. —, 2006 WL 1300993 (Bankr. D. N.H. April 14, 2006).

[35]The Court notes that despite their negative disposable income, the Debtors propose to pay unsecured creditors a total of $500. The Court would not be surprised if the Debtors' projected disposable income is different from the disposable income computed on Form B22C. Nevertheless, neither the Trustee nor any party in interest has presented evidence to rebut the

"applicable commitment period" does not require the debtors to commit to a plan lasting 60 months so long as their projected disposable income is computed over that length of time. Because the Debtors' plan proposes to return their projected disposable income to unsecured creditors, their plan meets the requirements of § 1325(b)(1)(B).

The Court notes that the Trustee raises other objections to confirmation of the Debtors' proposed chapter 13 plan. In light of the Court's decision, however, the Court need not address the Trustee's additional concerns at this time but will at a future confirmation hearing.

## V.   CONCLUSION

The Trustee's objection to confirmation of the Debtors' proposed chapter 13 plan based on the interpretation of "applicable commitment period" should be overruled. A separate Order accompanies this Memorandum Opinion.

___ooo0ooo___



---

presumption discussed in Jass that the calculations on Form B22C represent the Debtors' projected disposable income. If the presumption were rebutted by evidence, the Court would require the Debtors to comply with § 1325(b)(1)(B) by providing to unsecured creditors their monthly disposable income multiplied by the "applicable commitment period," which is 60 months in this case.

      Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Kevin Anderson
405 South Main Street, Suite 600
Salt Lake City, UT 84111

Robert and Shelley Fuger
348 Alfred Drive
Tooele, UT 84074

David Berry
5296 South Commerce Drive, #200
Salt Lake City, UT 84107